# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| **KENNETH SPENCER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:19-cv-02825-JTF-atc** |
| | ) | |
| | ) | |
| **BRIAN ELLER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

## ORDER ADDRESSING VARIOUS MOTIONS

---

Before the Court are the following filings:

(1) two post-judgment motions filed by Kenneth Spencer[1] ("Petitioner"):
    (a) *pro se* Rule 60(b) Motion for Relief from Judgment, with a Memorandum of Law submitted by Spencer's counsel in support thereof (ECF Nos. 30 & 74 (collectively, the "Rule 60(b) Motion")); and
    (b) *pro se* Motion for Sanctions against Former Counsel of Record Robert H. Golder, (ECF No. 31 (the "Sanctions Motion"));
(2) the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1 ("§ 2254 Petition")), filed on Spencer's behalf by former habeas counsel Golder;
(3) Spencer's *pro se* Motion for Leave to Amend the § 2254 Petition (ECF No. 12 ("MTA")); and
(4) Spencer's *pro se* proposed Amended § 2254 Petition (ECF No. 13) ("Amended Petition")).

For the reasons explained below, the Court:

(1) **DENIES AS MOOT** the Rule 60(b) Motion (ECF Nos. 30 & 74);
(2) **DENIES** the Sanctions Motion (ECF No. 31);
(3) **GRANTS IN PART AND DENIES IN PART** the MTA (ECF No. 12); and
(4) **DIRECTS** the Respondent, Warden Brian Eller, to respond to the Operative § 2254 Petition (ECF No. 13).

---

[1] Petitioner is presently confined at the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee and is assigned Tennessee Department of Correction ("TDOC") inmate number 00479918 (*see* https://foil.app.tn.gov/foil/details.jsp (TDOC Felony Offender Information website, showing Spencer is presently confined at the NECX, with a sentence end-date of February 1, 2063) (last accessed May 31, 2024)).

Also, the Clerk is **DIRECTED** to modify the docket to change the name of Respondent from Bert Boyd to Brian Eller, the current Warden of the NECX.

## I.      BACKGROUND

### A. Criminal Proceedings

On October 8, 2010, Petitioner was found guilty by a jury in the Shelby County Criminal Court for the November 7, 2008 first-degree premeditated murder of Antonio Delk ("Victim"). The Victim was killed inside his home by a stray bullet Petitioner fired toward two vehicles under the belief that a man named Arsenio Delk was inside one of the vehicles. *See State v. Spencer*, No. W2010-02455-CCA-R3-CD, 2011 WL 6147012, at *1 (Tenn. Crim. App. Dec. 8, 2011) ("*Spencer I*"); *see also State v. Spencer*, No. W2012-02720-CCA-R3-CD, 2014 WL 1410317, at *6 (Tenn. Crim. App. Apr. 10, 2014) ("*Spencer II*"), *perm. app. denied* (Tenn. Aug. 27, 2014). The trial court sentenced Petitioner to life imprisonment. *Spencer II*, 2014 WL 1410317, at *1.

On appeal, the Tennessee Court of Criminal Appeals ("TCCA") concluded that (1) the evidence was sufficient to sustain Petitioner's conviction but (2) the trial court committed reversible error in its jury instructions on premeditation. The appellate court, therefore, reversed the conviction and remanded for a new trial. *Spencer I*, 2011 WL 6147012, at *1.

At the conclusion of his second trial, Petitioner was again convicted of the first-degree premeditated murder of the Victim. *See Spencer v. State*, No. W2018-00545-CCA-R3-PC, 2019 WL 1109831, at *1 (Tenn. Crim. App. Mar. 11, 2019) ("*Spencer III*"). On direct appeal, Petitioner argued that (1) the evidence was insufficient to establish premeditation for first degree murder; and (2) the trial court erred when it allowed into evidence certain handguns and ammunition found during a search and unrelated to the Victim. *Id*. at *1, *4. The TCCA concluded that the trial court erred in admitting into evidence weapons that were unrelated to the Victim's death, but that the error was harmless given the overwhelming evidence of Petitioner's guilt. *Spencer III*, 2019 WL

1109831, at *1. On April 10, 2014, the appellate court affirmed Petitioner's conviction, and on August 27, 2014, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. *Id*. (citing *Spencer II*, 2014 WL 1410317, at *1). (*See also* ECF No. 1-1 at PageID 13-22.)

Attorney Cliff Abeles, of the Shelby County Public Defender's Office, represented Petitioner during his arraignment, plea, trial, and sentencing for both trials. *Spencer II*, 2014 WL 1410317, at *1. (*See also* ECF No. 1 at PageID 8.)  Attorney Tony Brayton, also of the Shelby County Public Defender's Office, represented Petitioner on the first and second direct appeals. *Spencer II*, 2014 WL 1410317, at *1. (*See also* ECF No. 1 at PageID 8; ECF No. 1-3 at PageID 110.)

On May 5, 2015, Petitioner filed a *pro se* petition for post-conviction relief. *Spencer III*, 2019 WL 1109831, at *1. (*See also* ECF No. 1-1 at PageID 24-33.) On January 20, 2017, Petitioner's appointed counsel, Seth M. Seagraves, filed an amended petition for post-conviction relief. (ECF No. 1-1 at PageID 41, 52-60; *see also* ECF No. 1 at PageID 8-9.) The post-conviction court held an evidentiary hearing on September 8, 2017. *Spencer III*, 2019 WL 1109831, at *2. (*See also* ECF No. 1-2 at PageID 74-108.) On March 14, 2018, the post-conviction court entered an order denying relief. *Id*. at *3. (*See also* ECF No. 1-1 at PageID 63-69.) On March 26, 2018, Petitioner filed a notice of appeal. (ECF No. 1-1 at PageID 71.) The TCCA affirmed the judgment of the post-conviction court on March 11, 2019. *Spencer III*, 2019 WL 1109831, at *1, 3-5. (*See also* ECF No. 1-4 at PageID 119-25.) On July 18, 2019, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. *Spencer v. State*, No. W2018-00545-SC-R11-PC, 2019 Tenn. LEXIS 346, at *1 (Tenn. July 18, 2019).

## B.  Habeas Proceedings

On November 29, 2019, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1 ("§ 2254 Petition")), through counsel Robert Golder. On December

2, 2019, the Clerk of Court sent a deficiency notice to Golder about his failure to either pay the filing fee or apply for Petitioner to proceed *in forma pauperis*. (ECF No. 6.) Golder did not respond.

On April 15, 2020, the Court ordered Petitioner to file an *in forma pauperis* affidavit or pay the habeas filing fee within thirty days. (ECF No. 8 at PageID 2 (notifying Petitioner that a "[f]ailure to comply with this order in a timely manner will result in dismissal of this action without further notice for failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure").) Petitioner failed to comply with, or otherwise respond to, the Court's April 15, 2020 Order.  On July 22, 2020, the Court dismissed the § 2254 Petition without prejudice for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b).  (ECF No. 9.)

On October 13, 2020, Spencer, without the assistance of counsel, filed the Motion for Leave to Amend ("MTA") along with a proposed Amended Petition. (ECF No. 12, 13.)  At the same time, Spencer submitted a Motion For Withdrawal Of Retained Counsel And Permission To Proceed *Pro Se.* (ECF No. 15.) On December 3, 2020, the Court granted Petitioner's Motion To Allow Counsel To Withdraw and denied leave to amend because Petitioner still had not cured the deficiency that led to the dismissal of this action.[2] (ECF No. 17).  The deficiency was cured on December 30, 2020 when the habeas filing fee was paid. (ECF No. 21.)  On January 8, 2021, this case was re-opened.

On February 12, 2021, Spencer filed a *pro se* Rule 60(b) Motion for Relief from Judgment and a *pro se* Motion to Sanction Former Counsel of Record Robert Golder. (ECF Nos. 26 & 27.) The Court denied both motions due to their defective certificates of service. (ECF No. 32 at PageID 826.)  However, on March 5, 2021, Spencer filed the Rule 60(b) Motion and Sanctions Motion,

---

[2] Spencer still had not filed an *in forma pauperis* affidavit or paid the five-dollar ($5.00) habeas filing fee. The Court admonished him that "[i]f [he] elects to pursue this action, he must either file a properly supported *in forma pauperis* application or pay the habeas filing fee within thirty (30) days." (*Id.* at PageID 285.)

now pending before the Court. (ECF Nos. 30 & 31.) Spencer also filed an affidavit in support of the Rule 60(b) Motion. (ECF No. 36). The Warden responded in opposition on July 7, 2021. (ECF No. 40).[3] The Court appointed Attorney Lee Gerald to represent Petitioner and held an evidentiary hearing on April 28, 2022 regarding the parties' submissions. (*See* ECF Nos. 51 & 68-70.)  The Court allowed post-hearing briefs. (*See* ECF No. 68, 71 & 74.)  Finally, Attorney Robert Sirianni, as new counsel for Petitioner, filed "Petitioner's Supplemental Memorandum of Law And Fact" on February 16, 2023. (ECF No. 76.)[4]

## II.     ANALYSIS

### A.  Rule 60(b) Motion

In his Rule 60(b) Motion, Petitioner relies on Federal Rule of Civil Procedure 60(b)(1) and (b)(6) to seek relief from the Court's July 22, 2020 order of dismissal for failure to pay the filing fee.  (ECF No. 30 at PageID 767; ECF No. 30-1 at PageID 771, 775-90; and ECF No. 74 at PageID 1157-58.)  Petitioner's Rule 60(b) Motion is moot because he seeks relief that has already been granted. When the filing fee was paid on December 30, 2020, the case was re-opened on the Court's docket, granting the relief Petitioner now seeks.  (ECF No. 21.) Therefore, Petitioner's Rule 60(b) Motion **DENIED AS MOOT**.  (ECF Nos. 30 & 74.)  To assuage any uncertainties about this case's status, the Dismissal Order and the Judgment are **VACATED**.

### B.  Sanctions Motion

In the Sanctions Motion, Petitioner seeks four thousand five hundred dollars ($4,500.00) in sanctions against Golder pursuant to Fed. R. Civ. P. 11(c) and 28 U.S.C. § 1927, based on Golder's "egregious misconduct and personal bad faith conduct." (ECF No. 31 at PageID 793 &

---

[3]  Petitioner also filed a *pro se* motion for order to show cause regarding the Rule 60(b) Motion (ECF No. 42) and a *pro se* motion to strike Golder's affidavit (ECF No. 43), which the Court denied. (*See* ECF No. 44.)
[4]  Sirianni did not enter an appearance until March 30, 2023. (ECF No. 77.)  On April 19, 2023, Gerald filed a motion to withdraw as counsel (ECF No. 78), which the Court granted on April 20, 2023 (*see* ECF No. 79.)

821; ECF No. 31-1 at PageID 795.) The Sanctions Motion is not well taken for the reasons set forth below.

### i.   Sanctions Under Fed. R. Civ. P. 11

Under Fed. R. Civ. P. 11(c)(2), "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Rule 11(b) addresses representations to the court and states:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*See* Fed. R. Civ. P. 11(b)(1)-(4). Petitioner seeks sanctions for Golder's misconduct and unethical behavior. (*See* ECF No. 31 at PageID 793; and ECF No. 31-1 at PageID 795-96.) Petitioner accuses Golder of violating the rules of professional conduct and demonstrating a lack of diligence, competence, and professionalism. (ECF No. 31-1 at PageID 797-803.) Specifically, Petitioner seeks sanctions against Golder for "malfeasance and rank misconduct" that "irrefutably demonstrate a lack of diligence, competence and professionalism", based on counsel's "inartfully drafted habeas petition"; counsel's failure to notify Petitioner of the Court's December 2, 2019 Order; counsel's failure to pay the habeas filing fee; counsel's failure to comply with the Court's April 15, 2020 Order; and counsel's failure to notify Petitioner that his "habeas petition has been dismissed for counsel's own failure to comply and prosecute." (ECF No. 31-1 at PageID 797-800.)

However, Petitioner has not tied his arguments about Golder's conduct to sanctionable conduct as enumerated in Fed. R. Civ. P. 11(b).

Petitioner's grievances with Golder sound more in the nature of an allegation of legal malpractice than a Rule 11 sanctions motion. Under Tennessee law, a plaintiff pursuing a claim of legal malpractice must show (1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages. *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001.) In contrast, Rule 11 sanctions are to deter litigants from offering frivolous and objectively unreasonable filings and arguments. *Moore v. Davis*, No. 05-2500, 2006 WL 767923, at *2 (W.D. Tenn. Mar. 23, 2006). It appears that Petitioner's complaints about Golder's performance would be better addressed in a complaint for legal malpractice.

Even if Petitioner properly alleged sanctionable conduct, it does not appear that he complied with the procedural requirements for bringing a Fed. R. Civ. P. 11(c)(1)(A) motion. As set forth therein, a motion for Rule 11 sanctions "shall describe the specific conduct alleged to violate" the Rule, and must be served on the offending party at least twenty-one (21) days before it is filed with the court. Fed. R. Civ. P. 11(c)(1)(A). Only after expiration of the twenty-one-day "safe harbor" period may the movant file the motion for sanctions. *Ridder v. City of Springfield,* 109 F.3d 288, 294 (6th Cir.1997). This safe harbor provision is a mandatory procedural prerequisite to filing a Rule 11 motion for sanctions. Fed. R. Civ. P. 11(c)(2); *see also Ridder,* 109 F.3d at 296. The Sixth Circuit requires "strict adherence" to the principle that "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed." *Uszak v. Yellow Transp., Inc.*, 343 F. App'x 102, 107-08 (6th Cir. 2009) (quoting *Ridder*, 109 F.3d at 297.)

7

Here, Petitioner does not assert, and the record does not reflect, that he provided Golder with prior notice of Petitioner's intent to file for Rule 11 sanctions. In the Sanctions Motion, Petitioner gives the same date for serving the Sanctions Motion on Golder and filing it with the Court.  (ECF No. 31 at PageID 794; ECF No. 31-1 at PageID 822; ECF No. 31-2 at PageID 823.)

For all these reasons, Petitioner is not entitled to relief under Rule 11.

### ii.    Sanctions Under 28 U.S.C. § 1927

Petitioner's reliance on 28 U.S.C. § 1927 in the Sanctions Motion is similarly misplaced. (ECF No. 31 at PageID 793, 795 & 804.) An attorney's conduct may be "sanctionable under § 1927 'without a finding of bad faith, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'" *Rentz v. Dynasty Apparel Indus., Inc*., 556 F.3d 389, 396 (6th Cir. 2009) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)).  *See also Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 275-76 (6th Cir. 2010).

The purpose of § 1927 is to deter dilatory litigation practices and punish aggressive tactics that far exceed zealous advocacy. *Kilgore v. Hunter*, No. 1:16-cv-340, 2018 WL 6613820, at *4 (E.D. Tenn. Nov. 27, 2018). The Sixth Circuit has stated that "§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Application of § 1927 is warranted "when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense *to the opposing party*.'" *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir. 1996) (*quoting In re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987)) (emphasis added).

8

Here, Petitioner does not contend that Golder pursued a frivolous claim or sought to unreasonably multiply Petitioner's legal proceedings. Because Petitioner is not entitled to relief under either theory, the Sanctions Motion is **DENIED**.

### C.  Motion to Amend

#### i.  The Proposed Amended Petition is untimely.

Petitioner filed his initial § 2254 Petition on November 29, 2019. (ECF No. 1.) He filed the MTA and the proposed Amended Petition on October 13, 2020. (ECF Nos. 12-13.)

There is a one-year statute of limitations for the filing of a petition for a writ of habeas corpus "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The AEDPA establishes "a tight time line, a one-year limitation period ordinarily running from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Mayle v. Felix*, 545 U.S. 662 (2005). "Any attempt to raise a new claim for relief in a Rule 15 motion to amend pleadings is subject to AEDPA's one-year statute of limitations." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). Under § 2244(d)(1)(A), the running of the limitations period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." State convictions ordinarily become final when the time expires for filing a petition for a writ of certiorari from a decision of the highest state court on direct appeal. *Pinchon v. Myers*, 615 F.3d 631, 640 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 585 (6th Cir. 2009).

Here, the TCCA affirmed Petitioner's convictions and sentences on April 10, 2014. *See Spencer II*, 2014 WL 1410317, at *6. The Tennessee Supreme Court denied permission to appeal on August 27, 2014. (*See id*. at *1). Petitioner's conviction became final upon the expiration of his time to file a petition for a writ of certiorari with the United States Supreme Court, which occurred on Tuesday, November 25, 2014 -- ninety (90) days after the Tennessee Supreme Court denied

discretionary review on August 27, 2014. *See* Sup. Ct. R. 13.1 (requiring a petition for writ of certiorari to be filed with the Clerk of the United States Supreme Court within ninety (90) days after entry of order denying discretionary review). The running of the § 2254 limitations period commenced on November 26, 2014.

The AEDPA statute provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).  Here, the running of the limitations period was tolled when Petitioner filed his *pro se* post-conviction petition on May 5, 2015. *See Spencer III*, 2019 WL 1109831, at *1. By that time, one hundred and sixty (160) days of the one-year § 2254 limitations period had elapsed.

On July 18, 2019, the Tennessee Supreme Court denied Petitioner's application for discretionary review of the March 14, 2018 denial of post-conviction relief. *See Spencer v. State*, No. W2018-00545-SC-R11-PC, 2019 Tenn. LEXIS 346, at *1 (Tenn. July 18, 2019); *Spencer III*, 2019 WL 1109831, at *3.  The running of the § 2254 limitations period recommenced on July 19, 2019. *See* 28 U.S.C. § 2244(d)(2). The limitations period expired two hundred and five (205) days later, on Monday, February 10, 2020.[5]  That means Petitioner had until February 10, 2020 to file a timely habeas petition and any amendments. *See* 28 U.S.C. 2244(d)(1).

Golder electronically filed Petitioner's initial § 2254 Petition on November 29, 2019, seventy-three (73) days prior to the February 10, 2020 expiration of the § 2254 limitations period. The initial § 2254 Petition is therefore timely.

---

[5]  Because the last day of the § 2254 limitations period fell on Sunday, February 9, 2020, Petitioner had until the close of business on Monday, February 10, 2020 to file a timely § 2254 petition.  *See* Fed. R. Civ. P. 6(a)(1)(C).

However, Petitioner's MTA and proposed Amended Petition, filed on October 13, 2020, were not timely under 28 U.S.C. 2244(d)(1). As explained below, Petitioner's claims in his proposed Amended Petition are untimely unless they relate back to his initial § 2254 Petition.

ii.    **Whether the claims in the amended § 2254 petition relate back to the initial petition**

Pursuant to 28 U.S.C. § 2242, a federal habeas petition may be amended according to the requirements set forth in Federal Rule of Civil Procedure 15, which governs amendment of claims. *See, e.g., Oleson v. United States*, 27 F. App'x 566, 568–570 (6th Cir. 2001). Under certain circumstances, Rule 15 allows amendments to "relate back" to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B.) However, "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle,* 545 U.S. at 664; *see also United States v. Clark*, 637 F. App'x 206, 209 (6th Cir.), *cert. denied*, 136 S. Ct. 2032, 195 L. Ed. 2d 234 (2016.) In other words, "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659.

"[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *See Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017) (quoting *Cox v. Curtin*, 698 F. Supp. 2d 918, 931 (W.D. Mich. 2010)). The Supreme Court expressly rejected an interpretation of the same "conduct, transaction, or occurrence" to mean the same "trial, conviction, or sentence." *See Mayle*, 545 U.S. at 664. In short, the untimely claims in the proposed Amended Petition relate

11

back to the claims in the timely § 2254 Petition only if the Amended Petition's claims and the § 2254 Petition's claims share a common core of operative facts.

In his § 2254 Petition, Petitioner asserts three (3) grounds:

(1)    Trial counsel Abeles rendered ineffective assistance of counsel ("IAC") in violation of Petitioner's Sixth Amendment rights by "fail[ing] to pursue [an] advantageous plea offer … of a 20-year sentence prior to the first trial or between the two trials" (ECF No. 1 at PageID 4 ("IAC-Plea Offer Claim"));

(2)    Trial counsel Abeles rendered IAC in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights by "fail[ing] to seek a jury instruction on accomplice testimony" (*id*. at PageID 5 ("IAC-Jury Instruction Claim")); and

(3)    The trial court violated Petitioner's Fifth Amendment right to due process by "admi[tting] prejudicial firearms and ammunition that were unrelated and irrelevant to the alleged offense" (*id*. at PageID 7 ("Due Process Claim")).

### iii.    The Proposed Amended Petition

In his MTA, Petitioner asserts twenty-seven (27) claims:

(1) IAC by post-conviction counsel Seagraves in "fail[ing] to argue that trial counsel Abeles was ineffective when he failed to challenge the validity and legality of the arrest warrant" (ECF No. 13 at PageID 459);

(2) IAC by Abeles in "fail[ing] to challenge the validity and legality of the arrest warrant" (*id*.);

(3) IAC by Seagraves in "fail[ing] to argue that Abeles was ineffective when he failed to challenge the admissibility of Mr. Spencer's inculpatory statements" (*id*.);

(4) IAC by Abeles in "fail[ing] to challenge the admissibility of Mr. Spencer's inculpatory statements" (*id*.);

(5) IAC by Seagraves in "fail[ing] to argue that Abeles failed to properly move to suppress the results of the search warrants which were facially invalid" (*id*. at PageID 460);

(6) IAC by Abeles in "fail[ing] to properly move to suppress the results of the search warrants which were facially invalid" (*id*.);

(7) IAC by Seagraves in "fail[ing] to argue that Abeles was ineffective when he failed to challenge the prosecutorial misconduct of D.A. Amy Weirich" (*id*. at PageID 461);

(8) IAC by Abeles in "fail[ing] to properly challenge the prosecutorial misconduct of D.A. Amy Weirich" (*id*.);

(9) IAC by Seagraves in "fail[ing] to argue that Abeles was ineffective for failing to argue the District Attorney's Office violated the requirements of *Mooney v. Holohan*, 294 U.S. 103 (1935) and *Napue v. Illinois*, 360 U.S. 264 (1959) when they knowingly suborned perjury and/or presented the false testimony of Detective Matthew Keaton and Detective Robert Butterick at Petitioner's 2012 retrial" (*id*.);

(10) IAC by Abeles in "fail[ing] to properly argue that the District Attorney's Office violated the requirements of *Mooney v. Holohan*, 294 U.S. 103 (1935) and *Napue v. Illinois*, 360 U.S. 264 (1959) when they knowingly suborned perjury and/or presented the false testimony of Detective Matthew Keaton and Detective Robert Butterick at Petitioner's 2012 retrial" (*id*.);

(11) IAC by Seagraves in "fail[ing] to argue that Abeles was ineffective when he failed to argue that the acquittal first instructions had a substantial and injurious effect or influence in determining the jury's verdict" (*id*. at PageID 462);

(12) IAC by Abeles in "fail[ing] to argue that the acquittal first instructions had a substantial and injurious effect or influence in determining the jury's verdict" (*id*.);

(13) IAC by Seagraves in "fail[ing] to argue that Abeles rendered ineffective assistance by failing to introduce exculpatory evidence regarding the actual perpetrators of the October 31, 2008 shooting of Mr. Antonio Delk" (*id*.);

(14) IAC by Abeles in "fail[ing] to introduce exculpatory evidence regarding the actual perpetrators of the October 31, 2008 shooting of Mr. Antonio Delk" (*id*.);

(15) IAC by Seagraves in "fail[ing] to argue that Abeles was ineffective for failing to properly argue that Judge Blackett's evidentiary ruling on the admissibility of Mr. Spencer's prior bad acts was wrong as a matter of both state and federal law" (*id*.);

(16) IAC by Abeles in "failing to properly argue that Judge Blackett's evidentiary ruling on the admissibility of prior bad acts was wrong as a matter of both state and federal law" (*id*.);

(17) IAC by Seagraves in "fail[ing] to argue that Abeles rendered ineffective assistance when he himself failed to argue/prove to the jurors that the bullet that struck the victim was the result of the ricocheting projectiles fired randomly and wildly, so as to negate the *mens rea* elements of 'premeditation] and 'intent'" (*id*.);

(18) IAC by Abeles in "failing to argue/prove to the jurors that the bullet that struck the victim was the result of the ricocheting projectiles fired randomly and wildly, so as to negate the *mens rea* elements of 'premeditation] and 'intent'" (*id*.);

(19) IAC by Seagraves in "fail[ing] to properly argue that Abeles rendered ineffective assistance of counsel when he failed to properly obtain and present exculpatory expert witness testimony in order to prove/explain to the jurors why the facts and circumstances of the shooting militated against the conclusion that Spencer acted with the requisite *mens rea* of 'premeditation' and 'intent'" (*id*.) (emphasis in original omitted);

(20) IAC by Abeles in "fail[ing] to properly obtain and present exculpatory expert witness testimony in order to prove/explain to the jurors why the facts and circumstances of the shooting militated against the conclusion that Spencer acted with the requisite *mens rea* of 'premeditation' and 'intent'" (*id*.) (emphasis in original omitted);

(21) IAC by Seagraves in "fail[ing] to properly argue that Abeles rendered ineffective assistance of counsel when he failed to present to the trial court that … cumulative errors … violated Spencer's due process rights to a full and fair trial" (*id*. at PageID 465-66);

(22) IAC by Abeles in "fail[ing] to argue that … cumulative errors … violated Spencer's due process rights to a full and fair trial" (*id*. at PageID 466);

(23) The TCCA, in direct violation of § 2254(d)(2), reached a decision that was based on an unreasonable determination of the facts in light of the evidence presented when it found that the trial court[']s admission of prejudicial weapons and ammunition was harmless" (*id*. ("Amended Petition Due Process Claim"));

(24) "The TCCA, in direct violation of § 2254(d)(1), reached a decision that involved an unreasonable application of *Strickland* when it found that Abeles was effective despite failing to require the accomplice testimony instruction in order to argue an accomplice theory at trial" (*id*. ("Amended Petition IAC-Jury Instruction Claim #1"));

(25) "The TCCA, in direct violation of § 2254(d)(2), reached a decision that was based on an unreasonable determination of the facts in light of the evidence presented when it found that Abeles was effective despite failing to require the accomplice testimony instruction in order to argue an accomplice theory at trial" (*id*. ("Amended Petition IAC-Jury Instruction Claim #2"));

(26) "The TCCA, in direct violation of § 2254(d)(1), reached a decision that involved an unreasonable application of *Strickland* when it found that Abeles was effective despite failing to pursue and communicate the actual benefits of the 20-year informal offer to the Petitioner" (*id*. at PageID 467 ("Amended Petition IAC-Plea Offer Claim #1")); and

(27) "The TCCA, in direct violation of § 2254(d)(2), reached a decision that was based on an unreasonable determination of the facts in light of the evidence presented when it found that Abeles was effective despite failing to pursue and communicate the actual benefits of the 20-year informal offer to the Petitioner" (*id*. ("Amended Petition IAC-Plea Offer Claim #2")).

As explained below, only five claims in the proposed Amended Petition relate back to the original § 2254 Petition. However, twenty-two of the twenty-seven claims in the proposed Amended Petition lack a common core of facts with the claims asserted in the § 2254 Petition.

### a. Four IAC Claims against Abeles in the Proposed Amended Petition Relate Back to the Initial § 2254 Petition.

The two IAC claims raised in Petitioner's timely-filed § 2254 Petition were that trial counsel Abeles rendered IAC by:

(1) "fail[ing] to pursue an advantageous plea offer" (ECF No. 1 at PageID 4) (*i.e.*, the IAC-Plea Offer Claim against Abeles) and

(2) "fail[ing] to seek a jury instruction on accomplice testimony" (*id*. at PageID 5) (*i.e.*, the IAC-Jury-Instruction Claim against Abeles). (ECF No. 1 at PageID 4-5.)

The twenty-six IAC claims in the proposed Amended Petition assert claims against not only trial counsel Abeles but also post-conviction counsel Seagraves. And among the IAC claims against Abeles in the proposed Amended Petition, Petitioner challenges trial counsel's conduct as to more than just the plea offer and accomplice testimony jury instruction. To make sense of Petitioner's 146-page proposed Amended Petition for the purpose of evaluating whether it relates back to the § 2254 Petition, the Amended Petition's IAC claims are grouped into categories:

   (1) two claims that Abeles was ineffective in "failing to pursue and communicate the actual benefits of the 20-year informal offer to Petitioner" (ECF No. 13 at PageID 467) (*i.e.*, the Amended Petition IAC-Plea Offer Claims #1 & #2);

   (2) two claims that Abeles was ineffective in "failing to require the accomplice testimony instruction in order to argue an accomplice theory at trial" (*id.* at PageID 466) (*i.e.*, the Amended Petition IAC-Jury Instruction Claims #1 & #2);

   (3) eleven other claims of IAC against Abeles for reasons not involving the plea offer or accomplice liability jury instruction, for example Abeles's alleged:

      (a) failure to challenge the arrest warrant;
      (b) failure to challenge admission of Spencer's inculpatory statements,
      (c) failure to move to suppress search warrant results,
      (d) failure to challenge prosecutorial misconduct,
      (e) failure to challenge the prosecutor's alleged *Mooney* and *Napue* violations,
      (f) failure to challenge the acquittal first instructions,
      (g) failure to introduce exculpatory evidence,
      (h) failure to challenge admission of prior bad acts evidence,
      (i) failure to present premeditation and intent *mens rea* elements,
      (j) failure to present exculpatory expert witness testimony, and
      (k) failure to argue cumulative errors (*id.* at PageID 459-67) (collectively, the "Amended Petition's Other Abeles-IAC Claims");

   (4) eleven claims of IAC against Seagraves (*id.*) (collectively, the "Amended Petition's IAC-Seagraves Claims")

The Amended Petition IAC-Plea Offer Claims #1 and #2 share a common core of operative facts with the § 2254 Petition's IAC-Plea Offer Claim. Specifically, in the § 2254 Petition, the IAC-Plea Offer Claim contends that Petitioner "was denied his Sixth Amendment right to effective assistance of counsel by trial counsel's failure to pursue a potential offer of a 20-year sentence prior to the first trial or between the two trials." (ECF No. 1 at PageID 4.) In the Amended Petition IAC-Plea Offer Claims #1 and #2, Petitioner contends that "the TCCA reached a decision that was 'unreasonable' when it concluded that trial counsel Abeles was effective despite failing to … pursue and … convey the true benefit of the 20 year deal." (ECF No. 13-1 at PageID 548-49, 553.) The § 2254 Petition's IAC-Plea Offer Claim and the Amended Petition IAC-Plea Offer Claims are based on the "same core facts" -- trial counsel's performance regarding the pursuit of, and communication about, the twenty-year plea deal.

The Amended Petition IAC-Jury Instruction Claims #1 and #2 share a common core of operative facts with the § 2254 Petition's IAC-Jury Instruction Claim. Specifically, in the § 2254

Petition, the IAC-Jury Instruction Claim contends that Petitioner "was denied his Sixth Amendment right to effective assistance of counsel by trial counsel's failure to seek a jury instruction on accomplice testimony. Trial counsel's ineffective assistance resulted in the denial of Petitioner's right under the Fifth, Sixth and Fourteenth Amendments to a complete and accurate charge of the law." (ECF No. 1 at PageID 5-6.) In the Amended Petition IAC-Jury Instruction Claims #1 and #2, Petitioner contends that "the TCCA reached a decision that involved an unreasonable application of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] when it found that trial counsel Abeles was effective despite failing to require the accomplice testimony instruction in order to argue an accomplice theory at trial." (ECF No. 13-1 at PageID 548, 550.) The IAC-Jury Instruction Claim and the Amended Petition IAC- Jury Instruction Claims #1 and #2 are based on the "same core facts," that is, trial counsel's performance regarding a jury instruction on accomplice testimony.

For these reasons, (1) the Amended Petition IAC-Plea Offer Claims #1 and #2 and (2) the Amended Petition IAC-Jury Instruction Claims #1 and #2 relate back to the claims in the initial § 2254 Petition and are timely under 28 U.S.C. § 2244(d)(1). The MTA (ECF No. 12) is, therefore, **GRANTED** as to (1) the Amended Petition IAC-Plea Offer Claims #1 and #2 and (2) the Amended Petition IAC-Jury Instruction Claims #1 and #2.

> **b. Eleven other IAC Claims against Abeles in the Proposed Amended Petition, and all eleven IAC Claims against Seagraves in the Proposed Amended Petition do not relate back to the § 2254 Petition.**

No claims similar in type to the Amended Petition's Other Abeles-IAC Claims and the Amended Petition's IAC-Seagraves Claims were raised in the § 2254 Petition. The attorney missteps alleged in the Amended Petition's Other Abeles-IAC Claims and the Amended Petition's IAC-Seagraves Claims are not similar in type to the attorney shortcomings alleged in the initial § 2254 Petition. The Amended Petition's Other Abeles-IAC Claims and Amended Petition's IAC-

16

Seagraves Claims are factually and temporally distinct from the two IAC claims in the § 2254 Petition.

First, the initial § 2254 Petition raised IAC claims against Abeles based *only* on counsel's performance relative to the plea offer and the accomplice jury instruction. (*See* ECF No. 1 at PageID 4-7; *cf*. ECF No. 13 at PageID 459-67.)  However, the Amended Petition's Other Abeles-IAC Claims are based on episodes of Abeles's conduct that are distinct from those giving rise to the initial § 2254 Petition's IAC claims. The mere fact that Petitioner raised two IAC claims against Abeles in the § 2254 Petition does not thereby render all IAC amendments timely and permissible. "A claim that 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth' will not so relate back." *Howard*, 533 F.3d at 476 (quoting *Mayle*, 545 U.S. at 650).  *See also Watkins*, 854 F.3d at 850 (quoting *Cox*, 698 F. Supp. 2d at 931).

Section 2244(d)(1)'s one-year statute of limitations is not jurisdictional and is subject to equitable tolling in extraordinary circumstances. *Johnson v. Settles*, No. 1:17-cv-1195, 2018 WL 1788064, at *1 (W.D. Tenn. Apr. 13, 2018) (citing *McClenson v. Sherman*, 329 F.3d490, 492 (6th Cir. 2003)).  Traditional equitable tolling requires a petitioner to show that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Here, Petitioner has not alleged, and the record does not disclose, that equitable tolling of § 2244(d)(1)'s limitation statute is appropriate to rescue the untimely Amended Petition Other Abeles-IAC Claims. (*See* ECF Nos. 12-13.)

Second, and as outlined above, the initial § 2254 Petition did not raise any IAC claims against post-conviction counsel Seagraves.  However, the eleven Amended Petition's IAC-Seagraves Claims seek to add new grounds for relief based on conduct committed by different

17

counsel altogether -- *i.e.*, post-conviction counsel, not trial counsel, which is impermissible and precludes relation back. (*See* ECF No. 1 at PageID 4-7; *cf.* ECF No. 13 at PageID 459-67.)  *See James v. United States*, No. 2:16-cv-335, 2019 WL 4122189, at *1 (E.D. Tenn. Aug. 29, 2019) (citing *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009).  In addition, the independent IAC claims against Seagraves are not cognizable in habeas action. Thus, regardless of its timeliness, amendment would be impermissible because IAC claims against post-conviction counsel are futile. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991.)

Because it would be futile to amend a § 2254 habeas petition to include time-barred claims that do not relate back, the Court **DENIES** the MTA as to (1) the Amended Petition Other Abeles-IAC Claims and (2) the Amended Petition IAC-Seagraves Claims. *See Wren v. United States*, No. 17-2054, 2018 WL 4278569, at *3 (6th Cir. Sept. 6, 2018) (observing that futility of amendment is one factor to consider in determining whether amendment should be allowed and finding that untimely amendments would be futile).

### c.  The Amended Petition's Due Process Claim relates back to the § 2254 Petition's Due Process Claim.

In the § 2254 Petition's Due Process Claim, Petitioner contends that the trial court violated his right to due process by "admi[tting] prejudicial firearms … that were unrelated and irrelevant to the alleged offense." (ECF No. 1 at PageID 7.) The Due Process Claim related to "searches of Petitioner's residence and the residence of co-defendant Kwane Morris … [that] recovered five firearms, all of which were admitted into evidence at trial." (*Id.*) Petitioner says that "[o]f the five firearms, only one was found to match evidence obtained from the crime scene, and that firearm was found at Morris's residence, not at Petitioner's residence." (*Id.*) Petitioner argues that "admission of [the] firearms … inflamed the passions of the jury [and] allowed the jury to consider [Petitioner's] firearms … possession … as evidence of propensity to commit violence." (*Id.*)

Petitioner contends that "[t]he TCCA reached a decision that was based on an unreasonable determination of the facts in light of the evidence presented when it found that the trial court[']s admission of prejudicial weapons was harmless." (ECF No. 13 at PageID 466.) The Amended Petition Due Process Claim relates to the of discoveries of "a .32 caliber semiautomatic handgun, a .177 caliber pellet pistol [and] a .22 revolver" at Petitioner's house and "a Bryco .380 semiautomatic pistol and a loaded .40 caliber handgun" at Morris's house. (ECF No. 13-1 at PageID 544.) Like the § 2254 Petition's Due Process Claim, the Amended Petition Due Process Claim arises from admission of five firearms into evidence against Petitioner at trial. Petitioner says he argued at trial that the weapons were "not relevant and even if they were relevant their introduction at trial would be more prejudicial than probative." (*Id*. at PageID 544-45.)

The Amended Petition Due Process Claim shares a common core of operative facts with the Due Process Claim in the § 2254 Petition. Both claims are based on the "same core facts" -- *i.e.*, the trial court's alleged error in admitting the firearms evidence and the evidence's propensity to unfairly prejudice Petitioner at trial. For that reason, the Amended Petition Due Process Claim relates back to the Due Process Claim in the § 2254 Petition and is timely under 28 U.S.C. § 2244(d)(1). The MTA is therefore **GRANTED** as to the Amended Petition's Due Process Claim.

### iv.   The Operative § 2254 Petition.

The following grounds shall be **CONSTRUED** as the operative § 2254 petition in this case:

> (1) the § 2254 Petition's:
> (a) IAC-Plea Offer Claim, alleging that trial counsel Abeles rendered IAC in violation of Petitioner's Sixth Amendment rights by "fail[ing] to pursue [an] advantageous plea offer … of a 20-year sentence prior to the first trial or between the two trials" (ECF No. 1 at PageID 4);
> (b) IAC-Jury Instruction Claim, alleging that Abeles rendered IAC in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights by "fail[ing] to seek a jury instruction on accomplice testimony" (*id*. at PageID 5); and

(c) Due Process Claim, alleging that the trial court violated Petitioner's Fifth Amendment right to due process by "admi[tting] prejudicial firearms and ammunition that were unrelated and irrelevant to the alleged offense" (*id*. at PageID 7);

(2) the Amended Petition IAC-Plea Offer Claims #1 and #2, alleging that Abeles was ineffective in "failing to pursue and communicate the actual benefits of the 20-year informal offer to Petitioner" (ECF No. 13 at PageID 467);

(3) the Amended Petition IAC-Jury Instruction Claims #1 and #2, alleging that Abeles was ineffective in "failing to require the accomplice testimony instruction in order to argue an accomplice theory at trial" (*id*. at PageID 466), and

(4) the Amended Petition Due Process Claim, alleging that the TCCA reached a decision that was based on an unreasonable determination of the facts in light of the evidence presented when it found that the trial court[']s admission of prejudicial weapons and ammunition was harmless"  (*id*.) (grounds (1) – (4) are referred to, collectively, as the "Operative § 2254 Petition")).

## D.  Order directing the Warden to respond to the Operative § 2254 Petition.

The Court **ORDERS** Respondent, under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), to respond to the Operative § 2254 Petition within twenty-eight (28) days. The answer shall include the complete state-court record, organized and appropriately indexed, as required by Administrative Order 16-31.[6] *See* 28 U.S.C. § 2254(b)(1). The answer shall address the timeliness of the Operative § 2254 Petition. The answer shall state whether the claim was exhausted, in whole or in part, in state court and shall assert appropriate procedural defenses, if any, for each claim. Where only a portion of a claim has been exhausted in state court, the answer shall specify the aspects of the claim that were exhausted and the aspects of the claim that are subject to procedural defenses. Where a merits analysis is appropriate, the answer shall: (1) cite the state court ruling for an exhausted claim; (2) identify the clearly established Supreme Court precedent governing the claim; and (3) respond to the

---

[6]  The party filing a document has the burden of ensuring the proper protection of sensitive information and taking measures to seal such information where appropriate. *See* Electronic Case Filing Attorney User Manual for the United States District Court, Western District of Tennessee, Section I.A.13; *see also* Electronic Case Filing Policies and Procedures Manual for the United States District Court Western District of Tennessee, Section 8 Sealed Documents, https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf (last accessed May 31, 2024).

petitioner's argument that he is entitled to habeas relief on the claim with appropriately reasoned legal and factual argument. The Court **DIRECTS** the Clerk to send a copy of the Operative § 2254 Petition (ECF Nos. 1 & 13) and this Order to Respondent and the Tennessee Attorney General and Reporter by certified mail. *See* Habeas Rule 4. Under Rule 5(e), Petitioner may, if he chooses, submit a reply to Respondent's answer or response within twenty-eight (28) days of service. Petitioner may request an extension of time to reply if his motion is filed on or before the due date of his reply. The Court will address the merits of the Operative § 2254 Petition, or of any motion filed by Respondent, after the expiration of Petitioner's time to reply, as extended.

### III.    CONCLUSION

Consistent with the foregoing, the Court **DENIES AS MOOT** Petitioner's Rule 60(b) Motion, **DENIES** the Sanctions Motion, **GRANTS IN PART AND DENIES IN PART** the MTA, and **DIRECTS** the Respondent, Warden Brian Eller, to respond to the Operative § 2254 Petition.

**IT IS SO ORDERED**, this 18th day of June, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE